**In re GEOTEL, INC., d/b/a Telemet, d/b/a Geotel Development Corp., Debtor.**

**Bankruptcy No. 091–70560–21.**

United States Bankruptcy Court, E.D. New York.

March 18, 1992.

Marc A. Pergament, Weinberg, Kaley & Pergament, Garden City, N.Y., for Chapter 7 Trustee.

Joseph L. Classen, Robinson & Cole, Stamford, Conn., for Oxford Health Plans (New York), Inc.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The Trustee in this Chapter 7 proceeding, voluntarily converted from Chapter 11, is moving through his attorney for an Order compelling Oxford Health Plans (New York), Inc. ("Oxford" or "OHPNY") to provide coverage under the health insurance policy issued to the Debtor. Specifically, what the Trustee is seeking is a court order to compel Oxford "to provide benefits and indemnification to the Debtor's employees for all presently outstanding claims covered under the insurance plan issued by Oxford to the Debtor through June 30, 1991."

The papers submitted on the motion and the oral argument had thereon underscore the soundness of Federal Bankruptcy Procedure 7001 which requires an adversary proceeding where the relief sought is "an injunction or other equitable relief". Fed.R.Bankr.P. 7001(7). What the Trustee is seeking is a mandatory injunction to compel the payment of unspecified and unknown claims by Oxford. In opposition to the motion, Oxford argues "the Trustee is asking the Court to adjudicate by motion the hypothetical claims of former employees against Oxford. Clearly this is inappropriate. If any such claims are made, they should be raised in civil actions where Oxford would have a full and fair opportunity to defend itself." Oxford's Memorandum in Opposition to the Trustee's Motion to Compel Oxford to Pay Certain of the Debtor's Former Employees' Health Insurance Claims, p. 10. The Court agrees. Not only would a civil action provide Oxford with a full and fair opportunity to defend itself, but it would clarify the relevant facts which remain obscure on the present record. Proceeding by way of motion is unfair to the parties involved.

### Background

On August 31, 1990, Geotel, Inc., d/b/a Telemet, d/b/a Geotel Development Corp. ("Geotel" or the "Debtor") entered into a group enrollment agreement with Oxford. In consideration of the payment of monthly premiums, Oxford agreed to provide medical and hospital services to employees of Geotel and their families. The contract read in part:

The first day of a month of coverage hereunder is the "Premium Due Date". The Group agrees to remit to OHPNY on or before the Premium Due Date the applicable Total Monthly Premium ... for each Subscriber and Family Member enrolled as of such date.... If such premium payment is not made in full by Group on or prior to the Premium Due Date, a thirty (30) day Grace Period shall be granted to Group for payment without interest charge. If payment is not received by the expiration of the Grace Period, then this Agreement may be ter-

minated by OHPNY.... *Only Members for whom timely payment is received by OHPNY shall be eligible for services and benefits hereunder and then, only for the period covered by such payment.*

Oxford Group Enrollment Agreement— New York, Ex. B to Affirmation of Marc A. Pergament in Support of Motion, Oct. 16, 1991, p. 2–3 (emphasis supplied).

Another provision of the contract covers termination. Oxford may terminate the contract, *inter alia:*

A. Upon written notice, if any payment required to be made by the Group is not received by the Premium Due Date, subject to a thirty (30) day grace period.

*Id.*, p. 5.

Geotel ceased making payments to Oxford on February 1, 1991. On March 21, 1991, Geotel voluntarily filed under Chapter 11. No premium payments were made in March or April.

On April 8th Oxford states it sent a letter to Geotel reading in part: "Oxford has not received payments for February, March and April 1991 premiums. This confirms that as a result, we have formally suspended payment of all claims for the employees of Geotel, Inc." (There is an issue of fact as to whether the letter was ever received. The Trustee's attorney maintains that Robert Sanator, the Debtor's President and Chief Executive Officer, testified at the Trustee's § 341 meeting that the Debtor received no notice from Oxford concerning the health insurance policy. (Trustee's Reply Memorandum of Law, p. 2))

At some point, it is not entirely clear when, Oxford ceased to honor claims filed by Geotel's employees. The only information the Trustee has provided as to what claims are unpaid is a statement in his Memorandum of Law submitted in support of his motion that Geotel's employees are owed approximately $75,000 for unreimbursed health and medical claims. Trustee's Memorandum of Law, October 16, 1991, p. 1.

On July 2, 1991, Geotel voluntarily converted to Chapter 7 and subsequently the

movant was appointed Trustee. At no time has Geotel either, while in Chapter 11 or in Chapter 7, assumed the contract with Oxford as authorized by 11 U.S.C. § 365.

The Trustee's motion originally relied on Oxford's claimed violation of New York state law with respect to termination of group health insurance coverage, specifically New York Labor Law, Section 217; New York Insurance Law, Section 4235(k); and Section 55.2 of Title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York. Labor Law Section 217 requires any policyholder of a group health insurance policy to notify each covered employee of an intended termination of the policy. Insurance Law Section 4235(k) requires an insurer to include in a notice of intention to terminate a policy a reference to the policyholder's responsibilities under Section 217 of the Labor Law.

Section 4235(k) of the Insurance Law, as implemented by Regulations of the State of New York, requires an insurer intending to terminate a group health insurance policy to give the policyholder at least 30 days prior written notice of its intent to terminate coverage and to advise the policyholder that it in turn must give written notice of the intended termination to each certificate holder resident in New York State. Section 217 of the Labor Law stipulates the penalties against the policyholder for failure to provide the requisite notice. That section imposes a monetary penalty of $5,000 to be recovered by the Commissioner of Insurance in a civil action. N.Y.Lab. Law § 217(7) (McKinney 1986 & Supp. 1992). The Section also provides that the *policyholder* who fails to give notice shall also be liable for appropriate damages in a civil action brought by the individual entitled to receive the notice of termination or to exercise the right to continue coverage. No sanctions are provided against the insurer. The Trustee asserted that Oxford had failed, contrary to the law, to notify the Debtor that its group coverage for health insurance was being terminated and failed to notify the Debtor of its duty to notify its employees of their right to convert their group health insurance policy to

individual policies and pay direct premiums to Oxford. The Trustee asserted that as a result, the Debtor's employees were denied the right to continue their health insurance policies by converting to direct individual policies and were subsequently denied health insurance coverage.

When Oxford replied to the Trustee's motion that it had not terminated coverage but merely suspended it, the Trustee shifted his attack to the letter of April 8, 1991 which notified Geotel of the suspension of benefit payments and argued that the letter constituted a violation of the stay imposed by 11 U.S.C. § 362 and, therefore, was in contempt of court.

## DISCUSSION

■ Any elaborate discussion of the relevant law is apt to be misleading because the record is wholly inadequate to determine the rights of the parties, both named and unnamed. What the Trustee is seeking to do is to persuade this Court to use its equitable powers under 11 U.S.C. § 105 to confer certain rights and benefits upon employees who are not parties to this action, who may well be pursuing their grievances elsewhere and who the Trustee does not represent and, so far as can be determined, has not been asked to represent. The Trustee is to be commended for trying to protect the rights of the employees who were the beneficiaries of Geotel's contract with Oxford and who probably are without any other champion. He describes what he is attempting as in the nature of a class action. But the Court declines the Trustee's invitation to follow his lead for any number of reasons.

First, the Court of Appeals for this Circuit has indicated that a bankruptcy court should be slow to exercise jurisdiction not explicitly conferred by the Bankruptcy Code. *In re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir.1984), *rev'g*, 32 B.R. 832 (Bankr.E.D.N.Y.1983).

Second, as the Court has already pointed out, the relief which the Trustee seeks is available only through an adversary proceeding. Fed.R.Bankr.P. 7001(7).

Third, the Court doubts whether 11 U.S.C. § 105(a) provides the Court with power to compel Oxford to pay the Debtor's former employees' medical claims. The Court is impressed with the fact that New York, when specifically addressing the problem of termination of a group policy, put the onus on the policyholder (Geotel) to notify its employees of termination and provided for damages to be recovered only from the policyholder in the event notice is not given. The only obligation on the insurer is to remind the policyholder of its obligations. The Trustee is asking the Court to employ 11 U.S.C. § 105(a) to expand the rights of Geotel's employees beyond those which New York legislated.

■ Furthermore, it is obviously a mixed question of law and fact, which this Court declines to decide on this abbreviated record, whether the policy was terminated or suspended by Oxford. There is no doubt that the enrollment agreement provided clear notice that if the premiums were not paid, benefits would be suspended. Despite the claim of an employee (not the one to whom the April 8th letter was addressed) that no notice was received from Oxford, it seems unlikely that Geotel long remained unaware that payments of health claims were suspended when it ceased payment of its premiums on February 1st, 1991. At the very least, Geotel's officers were aware of the suspension of premiums. They were likewise aware of the provisions of the contract authorizing suspension of the payment of benefits if premiums went unpaid. If there was a duty to Geotel's employees it would seem to lie with the Debtor under both the law and the facts.

■ The Court also declines to consider whether the letter of April 8th, which confirmed a suspension which so far as the record shows, took place pre-petition, violated the automatic stay of Section 362 or if it did, what the consequences of such violation are with respect to the relief sought by the Trustee. The Court likewise refuses to engage in speculation as to whether the employees of Geotel can claim the benefits of an executory contract, never assumed by the Debtor and probably suspended before

the Debtor filed under the Bankruptcy Code.

These are all problems appropriate for consideration in an adversary proceeding in an appropriate forum. For all the foregoing reasons, the Trustee's motion is denied without prejudice to a civil action in an appropriate forum by the Trustee or by any beneficiary of Geotel's group insurance plan.

Settle Order.